## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 04820 |
| | ) | Chapter 7 |
| STUART M. HANSON, d/b/a HANSON | ) | Judge John H. Squires |
| & WHITE, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MICHAEL DEADY, | ) | Adversary No. 09 A 00457 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STUART M. HANSON, individually, and | ) | |
| HANSON & WHITE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the complaint seeking an exception to the discharge of certain debts pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4), which was filed by Michael Deady against the debtor, Stuart M. Hanson and his company, Hanson & White, LLC. For the reasons set forth herein, the Court finds that the Creditor has demonstrated that the loans he made for $350,000 and $49,000 (less the $9,000 repayment) are non-dischargeable debts under § 523(a)(2)(A). However, the Creditor has failed to show that the additional $15,635.19 debt is non-dischargeable under § 523(a)(2)(A). Further, the Creditor has failed to demonstrate that any of the debts are non-dischargeable under § 523(a)(4).

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## II. FACTS AND BACKGROUND

Most of the facts in this matter are not in dispute. The plaintiff, Michael Deady (the "Creditor"), is the owner of an Illinois corporation named Deady Roofing and Construction, Inc. ("Deady Roofing"). According to the Creditor, Deady Roofing provides roofs for commercial and residential real property. The Creditor testified that he has been in the roofing business since 1985. Stuart Hanson (the "Debtor") was a member and the manager of Hanson & White, LLC ("H&W"), an Illinois limited liability company that was in the business of building custom and "spec" homes in the suburbs of Chicago.[1] The Debtor was involved in the day-to-day operations of H&W and in the dealings between Deady Roofing and H&W.

In 2005, H&W hired Deady Roofing to provide labor and materials for several construction projects on which H&W was the general contractor. In late 2006, the Creditor and the Debtor discussed the prospect of the Creditor's financial involvement in H&W's construction projects. The Creditor suggested that he become involved with a project that

---

[1] The Court notes that the Creditor did not filed an executed certificate of service to show proper service of the summons and complaint on H&W, the other defendant in this adversary proceeding. Moreover, H&W, a limited liability company, cannot receive a discharge. *See* 11 U.S.C. § 727(a)(1). Hence, the Court will not address the allegations in the complaint as they pertain to H&W.

-3-

H&W was completing on Colfax Street in Clarendon Hills, Illinois. The Debtor informed the Creditor, however, that the project was almost completed and that H&W was not interested in and had no need for the Creditor's financial participation.

On October 27, 2006, the parties met to discuss the Creditor's participation in other H&W construction projects. The Creditor and the Debtor discussed a project located at 262 South Prospect in Clarendon Hills (the "262 South Prospect Project"). The project involved the construction of a high-end custom home. The Debtor made notes regarding this meeting. (Creditor Ex. No. 3; Debtor Ex. No. 3.) The notes reveal that the parties discussed the 262 South Prospect Project and indicate that a $250,000 to $350,000 sum was mentioned. (*Id.*) According to the notes, the Debtor and the Creditor also discussed other H&W projects during the meeting. (*Id.*) These construction projects were located at Colfax and Ruby Streets in Clarendon Hills. (*Id.*) However, no specific sum of money was referenced in the Debtor's notes with respect to these other projects. (*Id.*) Rather, question marks were placed next to the notes on the Colfax and Ruby projects. (*Id.*)

At or about the same time as the October 2006 meeting, the Debtor told the Creditor that he was in the process of forming a new entity to be known as HW Development LLC ("HW Development"). According to the Debtor, at some point in the future, the Creditor would have the option of converting his financial participation into some form of membership interest in HW Development. HW Development, however, was never formed.

After the October 27, 2006 meeting, the Creditor agreed to loan H&W $350,000. According to the Creditor, he and the Debtor agreed that these funds would be used solely for the 262 South Prospect Project. The Creditor testified that he and the Debtor did not

-4-

discuss using this money for any other project. The Creditor also testified that he would not have loaned the money to the Debtor if he knew that the funds would be used for projects other than the 262 South Prospect Project. The Debtor disputes the Creditor's contention that all the funds were to be utilized solely for the 262 South Prospect Project. The Debtor testified that he told the Creditor that some of the monies would be invested in the 262 South Prospect Project and some of the funds would be invested in other ongoing H&W projects. The use of the funds is one of the few contested facts and the key dispute in this matter.

The Creditor provided the $350,000 to H&W in three installments: (1) $100,000 on November 15, 2006; (2) $150,000 on December 18, 2006; and (3) $100,000 on January 18, 2007. (Creditor Ex. No. 13 at pp. 1-3; Debtor Ex. No. 13 at pp. 1-3.) These checks were deposited into H&W's operating account as they were received.

At the time the Creditor gave H&W the last check, the Debtor provided the Creditor with two documents. The first document was a promissory note dated January 13, 2007 for $350,000 that had been signed by the Debtor as the managing member of H&W. (Creditor Ex. No. 4; Debtor Ex. No. 4.) The note stated that the principal amount of "$350,000, plus 20% of the net project profit on underlying investment projects; relating to the construction project specified, and as defined, in the Venture Agreement [discussed *infra*] . . . , shall be due and payable on the day of closing of the sale of the single-family residence specified in the Venture Agreement. . . ." (*Id.*) Under the terms of the promissory note, H&W was obligated to repay the Creditor $350,000 and any other amounts that had accrued by or before December 31, 2008. (*Id.*) While the promissory note was in effect, H&W was also required to provide the Creditor with periodic updates and business reviews, including financial

-5-

documentation as requested. It is undisputed that the Debtor did not provide the Creditor with any of the financial documentation that was requested.

The second document that the Debtor provided to the Creditor was a venture agreement (the "Venture Agreement") dated January 13, 2007. (Creditor Ex. No. 2; Debtor Ex. No. 2.) This document governed the agreement between the parties regarding the acquisition and development of real estate. Specifically, the Venture Agreement provided that the $350,000 given by the Creditor would "be used to acquire and enhance real estate projects as discussed." (*Id.*) The Venture Agreement also addressed how the Creditor's $350,000 could be converted into a membership interest in HW Development, which had not yet been formed. (*Id.*) Until this new entity was formed, the promissory note would remain in effect. The Venture Agreement defined the term "net project profit" as used in the promissory note to mean "all gross profits and receipts derived by H&W in conjunction with the Construction Projects, less usual and customary costs and expenses incurred and paid in the construction and sale of the aforesaid single-family residence. . . ." (*Id.*) The Venture Agreement did not define the terms "Construction Projects" or "aforesaid single-family residence."

In January 2008, the Debtor told the Creditor that H&W did not have enough funds to complete the 262 South Prospect Project. The Creditor testified that he questioned the Debtor regarding the $350,000 he loaned to H&W. According to the Creditor, the Debtor assured him that those monies went into the 262 South Prospect Project. Again, the Debtor disputes that the funds were used solely for that Project. The Creditor further testified that he asked the Debtor to provide him with the checking account records of H&W but stated

-6-

that he never received those records until after he filed the instant adversary proceeding.

Even though he did not obtain any H&W records, the Creditor loaned H&W additional funds

totaling $49,000. Those funds were distributed to H&W as follows: (1) $22,000 on January

22, 2008; (2) $13,500 on March 7, 2008; (3) $5,500 on April 3, 2008; and (4) $8,000 on

April 3, 2008. (Creditor Ex. No. 13 at pp. 4-7; Debtor Ex. No. 13 at pp. 4-7.) After the last

monies were turned over to H&W, the Debtor gave the Creditor a second promissory note

in the sum of $49,000. (Creditor Ex. No. 5; Debtor Ex. No. 5.) This note was dated April

4, 2008 and had a maturity date of March 31, 2009. (*Id.*) It was entitled "PROMISSORY

NOTE–Operating Capital." (*Id.*) The Debtor signed the document as managing member of

H&W and personally guaranteed the promissory note. (*Id.*) The Creditor contends that he

did not receive the signed note until July 2008. (Creditor Ex. Nos. 14 & 15; Debtor Ex. Nos.

14 & 15.)

On April 4, 2008, the Debtor sent the Creditor two e-mail messages. (Creditor Ex.

No. 14; Debtor Ex. No. 14.) In the first message, the Debtor thanked the Creditor for his

"continued support for our business." (*Id.*) He then went on to discuss the 262 South

Prospect Project and the remaining items that were unpaid on that Project. (*Id.*) In another

message later that day, the Debtor attached a copy of the promissory note "for the $49,000

operating capital you have contributed this year to keep our business afloat." (*Id.*)

Subsequently, on May 20, 2008, the Debtor sent the Creditor an e-mail message

wherein he discussed the $49,000 promissory note and an agenda for a future meeting.

(Creditor Ex. No. 15; Debtor Ex. No. 15.) One item that the Debtor listed as a topic of

discussion was "the project you funded at 262 [South] Prospect." (*Id.*) The Debtor proposed

the possibility of selling the real property at 262 South Prospect and noted that such action

would "make it a drawn out process for paying you back your significant investment in this

project." (*Id.*) He further noted that "[w]e would basically end up having a long term debt

to you which [H&W] would repay over time with proceeds from other projects." (*Id.*) The

e-mail message also mentioned the idea of the Creditor taking ownership of the 262 South

Prospect property because "all of the equity in the project was provided by you and Lori [(the

Creditor's wife)]." (*Id.*)

Thereafter, on May 27, 2008, the Debtor sent the Creditor another e-mail message

stating that he wanted to discuss "our options with [262 South] Prospect. . . ." (Creditor Ex.

No. 16; Debtor Ex. No. 16.) According to the Debtor, some of the options would "mean that

your money from this project would be tied up longer than anyone wants." (*Id.*)

On June 16, 2008, the Debtor once again informed the Creditor that H&W lacked the

funds to complete the 262 South Prospect Project and that additional monies were needed

to purchase appliances. As a result, the Creditor loaned H&W $15,635.19 so that H&W

could purchase appliances for the 262 South Prospect Project. (Creditor Ex. No. 13 at p. 8;

Debtor Ex. No. 13 at p. 8.) H&W spent more than $350,000 on the 262 South Prospect

Project. (Creditor Ex. No. 8; Debtor Ex. No. 8.) H&W sold the 262 South Prospect property

on April 9, 2009 for the sum of $1,100,000. (Creditor Ex. No. 18; Debtor Ex. No. 18.)

The Creditor did not retain or consult with an attorney to assist him in his dealings

with the Debtor and H&W. The Creditor testified that he had invested in real estate before

investing with the Debtor and H&W. Further, he admitted that he did not have any

reservations about investing in "spec" homes. The Creditor testified that he did not review

any financial information about H&W prior to loaning the $350,000. He did, however, request such information prior to making the $49,000 loan. The Creditor loaned H&W the funds even though he never received the requested financial data.

H&W has not repaid the Creditor any money on the $350,000 promissory note. The Creditor received $9,000 on the $49,000 promissory note that the Debtor personally guaranteed. H&W did not repay the Creditor the $15,635.19 he loaned the company for the purchase of the appliances for the 262 South Prospect property.

On June 5, 2009, the Creditor filed a five-count complaint against the Debtor and H&W. In Counts I and II of the complaint, the Creditor alleges that the Debtor made a false representation and used deceit to cheat him out of the loan proceeds. Specifically, the Creditor claims that the Debtor falsely represented to him that the funds he lent to H&W would be used for only three projects.[2] Further, the Creditor contends that the Debtor falsely

---

[2] The complaint alleges that the $350,000 loan proceeds were to be used for only three projects. However, at trial and in his post-trial submissions, the Creditor contends that all of the monies ($350,000, $49,000, and $15,635.19) loaned to the Debtor were to be used for only the 262 South Prospect Project. The Debtor takes issue with these inconsistencies.

Federal Rule of Bankruptcy Procedure 7015, which incorporates Federal Rule of Civil Procedure 15, governs amendment of pleadings. "'[T]he Federal Rules of Civil Procedure create [a system] in which the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence.'" *Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996) (*quoting Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir. 1985)). Rule 15(b)(2) provides in pertinent part that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). In determining whether there was implied consent, a court must determine "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir. 1992) (internal quotation omitted).

In this matter, the Court finds that the issue of whether all of the Creditor's monies ($350,000, $49,000 and $15,635.19) would be used solely for the 262 South Prospect Project was tried by implied consent. The Debtor had a full and fair opportunity to defend against

represented to him that he would either be repaid by December 31, 2008 or receive an interest in HW Development. Additionally, the Creditor alleges that these representations were made with the intent to deceive him and that he justifiably relied on the Debtor's misrepresentations when he lent H&W money. Accordingly, the Creditor maintains that the debts are non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Pursuant to Counts III and IV of the complaint, the Creditor contends that the debts arise from the Debtor's defalcation while acting in a fiduciary capacity and that the Debtor's actions constitute embezzlement. Thus, the Creditor seeks a finding that the debts be excepted from discharge under 11 U.S.C. § 523(a)(4).

The Debtor filed an answer to the complaint wherein he denied the material allegations contained in the complaint. In addition, the Debtor asserted two affirmative defenses: (1) the complaint is based upon the Venture Agreement and promissory notes between the Creditor and H&W, and, thus, the complaint fails to state a claim upon which relief can be granted against the Debtor; and (2) the Debtor reserves the right to assert any other claims or defenses as may become available.

On March 12, 2010, the Court held an evidentiary hearing in this matter. The Creditor moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52 and its bankruptcy analog Federal Rule of Bankruptcy Procedure 7052.

---

the allegations. He testified that he and the Creditor discussed more than one project for the Creditor's investment, and he denied that the Creditor's monies were be to used solely for the 262 South Prospect Project. Accordingly, the Court will treat this issue as if it had been raised in the pleadings. Because the issue was tried by implied consent, formal amendment of the Creditor's complaint is not necessary. *See Winger*, 82 F.3d at 144; *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992).

-10-

Pursuant to Bankruptcy Rule 7052(c), the Court reserved ruling on the motion until the close

of all the evidence.   Thereafter, the Court took the matter under advisement.   The Court

grants the Creditor's motion in part because he has proven all of the requisite elements under

§ 523(a)(2)(A) with respect to the $350,000 and $49,000 debts, but has not demonstrated all

of the elements pursuant to § 523(a)(4) as discussed *infra*.

### III. APPLICABLE STANDARDS

**A.      Exceptions to the Discharge of a Debt**

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh

start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir.

2002).   The party seeking to establish an exception to the discharge of a debt bears the

burden of proof. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th

Cir. 1992); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill.

1995).   The United States Supreme Court has held that the burden of proof required to

establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*,

498 U.S. 279, 291 (1991). *See also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In

re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994).   Exceptions to discharge are to be construed

strictly against a creditor and liberally in favor of a debtor. *In re Morris*, 223 F.3d 548, 552

(7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998); *In

re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985).   "[Section 523(a)] is narrowly construed so

as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh

start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D.

Ill. 2001).

**B.     11 U.S.C. § 523(a)(2)(A)**

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the

dischargeability of debts.  Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>
> . . .
>
> > (2) for money, property, services, or an
> > extension, renewal, or refinancing of credit, to
> > the extent obtained by–
> > > (A) false pretenses, a false
> > > representation, or actual fraud,
> > > other than a statement
> > > respecting the debtor's or an
> > > insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).   Section 523(a)(2)(A) lists three separate grounds for

dischargeability: actual fraud, false pretenses, and a false representation. *Id.*; *Bletnitsky v.*

*Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

**1. False Pretenses or False Representation**

In order to except a debt from discharge under the false pretenses or false

representation prongs of § 523(a)(2)(A), the creditor must establish the following elements:

(1) the debtor made a false representation of fact; (2) which the debtor (a) either knew to be

false or made with reckless disregard for its truth and (b) made with an intent to deceive; and

(3) the creditor justifiably relied on the false representation.  *Ojeda v. Goldberg*, 599 F.3d

712, 716-17 (7th Cir. 2010); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643

(Bankr. N.D. Ill. 2004); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr.

N.D. Ill. 2004).  To prevail on a § 523(a)(2)(A) complaint, all three elements must be

established.  *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D.

Ill. 2001).  Failure to establish any one fact is outcome determinative.  *Jairath*, 259 B.R. at

314.

    False pretenses in the context of § 523(a)(2)(A) include implied misrepresentations

or conduct intended to create or foster a false impression.  *Mem'l Hosp. v. Sarama (In re

Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996).  The Court has defined false pretenses

as follows:

> [A] series of events, activities or communications which,
> when considered collectively, create a false and misleading
> set of circumstances, or false and misleading understanding
> of a transaction, in which a creditor is wrongfully induced by
> the debtor to transfer property or extend credit to the debtor....
>
> A false pretense is usually, but not always, the product of
> multiple events, acts or representations undertaken by a
> debtor which purposely create a contrived and misleading
> understanding of a transaction that, in turn, wrongfully
> induces the creditor to extend credit to the debtor.  A "false
> pretense" is established or fostered willfully, knowingly and
> by design; it is not the result of inadvertence.

*Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (internal

quotation omitted).

    False pretenses do not necessarily require overt misrepresentations.  *Sarama*, 192

B.R. at 928.  "Instead, omissions or a failure to disclose on the part of a debtor can constitute

misrepresentations where the circumstances are such that omissions or failure to disclose

create a false impression which is known by the debtor."  *Id.*  Silence or concealment may

-13-

constitute false pretenses. *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 573 (Bankr. C.D. Ill. 2005); *Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 86 (Bankr. N.D. Ill. 2002).

A false representation can be shown through conduct and does not require a spoken or written statement. *Jairath*, 259 B.R. at 314. In other words, "[a] debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." *Health Benefit Plan v. Westfall (In re Westfall)*, 379 B.R. 798, 803 (Bankr. C.D. Ill. 2007). A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression. *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992).

### 2. Actual Fraud

The Seventh Circuit Court of Appeals has defined the term "fraud" for purposes of § 523(a)(2)(A) as follows:

> 'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the

-14-

mind, used to circumvent and cheat another[.]" *Id.* (internal quotation omitted). Hence, a

different analysis from misrepresentation must be utilized when a creditor alleges actual

fraud. *Id.* The *McClellan* court opined that because common law fraud does not always take

the form of a misrepresentation, a creditor need not allege misrepresentation and reliance

thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.* Rather, the

creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud

the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute.

*Id.* at 894. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only

actual ones. *Id.* The existence of fraud may be inferred if the totality of the circumstances

presents a picture of deceptive conduct by the debtor that indicates he intended to deceive

or cheat the creditor. *Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 666 (Bankr. C.D. Ill.

2006); *Sielschott*, 332 B.R. at 572.

### 3. Intent

Any cause of action under § 523(a)(2)(A)–false pretenses, false representation, or

actual fraud-- requires proof that the debtor acted with intent to deceive. *Pearson v. Howard*

*(In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Proof of intent to deceive is

measured by the debtor's subjective intention at the time the representation was made. *Mega*

*Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003); *see also*

*CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004).

Therefore, subsequent acts of fraud or omission do not demonstrate that the debtor had the

requisite intent at the time the representations were made. *Trevisan*, 300 B.R. at 717.

"Where a person knowingly or recklessly makes false representations which the person

-15-

knows or should know will induce another to act, the finder of fact may logically infer an

intent to deceive." *Jairath*, 259 B.R. at 315. Because direct proof of fraudulent intent is

often unavailable, fraudulent intent may be inferred from the surrounding circumstances.

*Hickory Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D.

Ill. 2007); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). The

determination of intent is a question of fact to be decided by the bankruptcy court. *Howard*,

339 B.R. at 919.

### 4. Justifiable Reliance

The final element under § 523(a)(2)(A) requires a finding of causation. Reliance on

a false pretense, a false representation, or actual fraud under § 523(a)(2)(A) must be

"justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Justifiable reliance is a less

demanding standard than reasonable reliance and requires only that the creditor did not

"blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had

utilized his opportunity to make a cursory examination or investigation." *Id.* at 71 (internal

quotation omitted). Justifiable reliance is an intermediate level of reliance that falls

somewhere between the more stringent "reasonable reliance" guidepost and the more lenient

"reliance in fact." *Id.* at 74-75.

The justifiable reliance standard imposes no duty to investigate unless the falsity of

the representation is readily apparent. *Id.* at 70-72. Whether a party justifiably relies on a

misrepresentation is determined by looking at the circumstances of a particular case and the

characteristics of a particular plaintiff, not by an objective standard. *Id.* at 71; *Bombardier*

*Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). "[A] person

is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (*quoting Field*, 516 U.S. at 70). "However, a 'plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods.'" *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (*quoting Zirkel v. Tomlinson (In re Tomlinson)*, Ch. 7 Case No. 96 B 27172, Adv. No. 96 A 1539, 1999 WL 294879, at *12 (Bankr. N.D. Ill. May 10, 1999)).

To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact."). *See also Westfall*, 379 B.R. at 805 (*citing Mayer*).

### C.     11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for a creditor to prevail under § 523(a)(4), he must prove that a debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. 11 U.S.C. § 523(a)(4). Count III of the Creditor's complaint alleges that the debts at issue are based on the Debtor's defalcation while acting as a fiduciary. Count IV of the complaint alleges that the Debtor fraudulently appropriated or embezzled the loan proceeds entrusted to him by the Creditor by using those

-17-

funds for unauthorized purposes. The Creditor does not allege larceny. Thus, the Court will

not discuss the larceny prong of tortious conduct proscribed under § 523(a)(4).

### 1. Express Trust or Fiduciary Relationship

A threshold inquiry is whether an express trust or a fiduciary relationship runs from

the Debtor to the Creditor under the facts of this matter. The existence of an express trust

or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain* (*In re Frain*),

230 F.3d 1014, 1017 (7th Cir. 2000). An express trust requires an explicit declaration of

trust, a clearly defined trust res, and an intent to create a trust. *Monroe*, 304 B.R. at 358. The

intent to create a trust relationship is a key element in determining the existence of an express

trust. *Id.*

A § 523(a)(4) cause of action can be based on a fiduciary relationship other than one

arising from an express trust. *See Frain*, 230 F.3d at 1017; *In re Marchiando*, 13 F.3d 1111,

1115-16 (7th Cir.1994). "A fiduciary relationship may arise separate from an express trust,

. . . but it is the substance and character of the debt relationship that determines whether such

a fiduciary relationship exists." *Monroe*, 304 B.R. at 358. The Seventh Circuit has found

that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in

knowledge or power between fiduciary and principal which . . . gives the former a position

of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116; *see also In re Woldman*, 92

F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations

in which there is substantial inequality in power or knowledge. . . ."). For example, a

lawyer-client relationship, a director-shareholder relationship, and a managing

partner-limited partner relationship all require the principal to "'repose a special confidence

-18-

in the fiduciary.'" *Frain*, 230 F.3d at 1017 (*quoting Marchiando*, 13 F.3d at 1116).

However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*,

92 F.3d at 547. A fiduciary relationship qualifies under § 523(a)(4) only if it "imposes real

duties in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116. In other words, the

fiduciary's obligation must exist prior to the alleged wrongdoing. *Id.*

### 2. Fraud or Defalcation

"Fraud" for purposes of this exception has generally been interpreted as involving

intentional deceit, rather than implied or constructive fraud. *Mut. Mgmt. Servs., Inc. v.*

*Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 754 (Bankr. N.D. Ill. 2010). "Defalcation"

is not a defined term in the Bankruptcy Code. One court has defined defalcation within the

context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity,

and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v.*

*Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (internal quotation omitted); *see*

*also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr. N.D.

Ill. 1986). Defalcation has also been defined as " a failure to account for money or property

that has been entrusted to another." *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389

(Bankr. N.D. Ill. 1994). An objective standard is used to determine defalcation, and intent

or bad faith is not required. *Id.* Mere negligence does not constitute defalcation. *Meyer v.*

*Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) (construing defalcation under §§ 523(a)(4)

and 523(a)(11)). That is, although the Seventh Circuit has not clearly defined the level of

tortious conduct necessary to constitute defalcation in the context of § 523(a)(4), it has

required something more than mere negligence or mistake, but less than fraud. *Id.* at 1385;

-19-

*Kress v. Kusmierek* (*In re Kusmierek*), 224 B.R. 651, 656-57 (Bankr. N.D. Ill. 1998). Some

degree of culpability is required to make a debt non-dischargeable as defalcation under §

523(a)(4), *see Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir.

1937), and a debtor's knowledge is relevant, *see Chase Lumber & Fuel Co. v. Koch* (*In re

Koch)*, 197 B.R. 654, 658-59 (Bankr. W.D. Wis. 1996). In sum, in order to establish that a

debt is non-dischargeable for reason of fraud or defalcation while acting in a fiduciary

capacity, the creditor  must establish, by a preponderance of the evidence, the existence of

an express trust or a fiduciary relationship and a debt caused by the debtor's fraud or

defalcation. *Grogan*, 498 U.S. at 291; *Woldman,* 92 F.3d at 547.

### 3. Embezzlement

Embezzlement under § 523(a)(4) has been defined as the "'fraudulent appropriation

of property by a person to whom such property has been entrusted or into whose hands it has

lawfully come.'" *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (*quoting Moore v. United

States*, 160 U.S. 268, 269 (1895)). To prove embezzlement, the creditor must show: (1) the

debtor appropriated the subject funds for his own benefit; and (2) the debtor did so with

fraudulent intent or deceit. *Id.*; *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R.

392, 400 (Bankr. N.D. Ill. 2005); *Monroe*, 304 B.R. at 359. A fiduciary relationship or trust

relationship need not be established in order to find a debt non-dischargeable by an act of

embezzlement. *Pawlinski*, 170 B.R. at 390. Embezzlement differs from larceny only in that

embezzlement requires that the original taking was lawful, or at least with the consent of the

owner, unlike larceny, which requires that felonious intent exist at the time of the taking.

*Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991).

-20-

## IV. DISCUSSION

A.    Section 523(a)(2)(A) Claim

1. Count I

In Count I of the complaint, the Creditor alleges that the Debtor, individually and doing business as H&W, made a false representation to the Creditor with respect to how the loan proceeds would be used. Specifically, the Creditor contends that the Debtor falsely represented to him that the loan proceeds discussed above would be used only on the 262 South Prospect Project. The Debtor and H&W had other ongoing projects that were underfunded and in need of additional monies to complete. According to the Creditor, the Debtor knew that the funds provided by the Creditor would be utilized for these other projects. Thus, the Creditor maintains that the Debtor made the representation that the funds would be used only for the 262 South Prospect Project with the intent of deceiving him. The Creditor alleges that he justifiably relied on the representation made by the Debtor to his detriment. Finally, the Creditor maintains that had he known that the monies he loaned to H&W would be used for projects other than the one he discussed with the Debtor, he would not have loaned the funds.

First, the Court finds that the Creditor established that the Debtor made a false representation with respect to how the $350,000 loan proceeds would be utilized. The Creditor testified that the Debtor told him that the funds would be used only for the 262 South Prospect Project. The Debtor denied telling the Creditor that the monies would be used only on this Project. Rather, according to the Debtor, he told the Creditor that some of the funds would be used on the 262 South Prospect Project and some of the monies would

be used for other projects. The Debtor testified that the Creditor intended to convert the debts into a general investment in HW Development, an entity that was never formed.

The Court is in the best position to assess the credibility of the witnesses and weigh the evidence. *See Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (noting that deference is given to a trial court's findings that involve credibility of witnesses because only the trial judge can observe the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is stated); *Torres v. Wis. Dep't of Health & Soc. Servs.*, 838 F.2d 944, 946 (7th Cir. 1988) (*citing Anderson*). "[A] court . . . may take into account a witness'[s] interest in the outcome of the case, his intentions, his seeming honesty, and his conduct on the witness stand." *Fosco*, 289 B.R. at 87 (*citing Welch v. Tenn. Valley Auth.*, 108 F.2d 95, 101 (6th Cir. 1939)).

Initially, the Court notes that both parties were impeached at trial with their respective deposition testimony. Such instances of impeachment focused on related collateral issues. Nevertheless, the Court was able to determine the credibility of both parties. Specifically, the Court observed the demeanor of the witnesses and finds the Creditor's testimony more credible than the Debtor's testimony. Additionally, the documentary evidence, in part, tends to support the Creditor's testimony. The Debtor's notes from the October 27, 2006 meeting between the Debtor and the Creditor indicated that three projects were discussed–Ruby and Colfax Streets and the 262 South Prospect Project. (Creditor Ex. No. 3; Debtor Ex. No. 3.) However, the notes about the Ruby and Colfax projects did not contain any dollar references. (*Id.*) Rather, there were question marks after the references to those projects. (*Id.*) With respect to the 262 South Prospect Project, however, the Debtor noted the amount of $250,000

-22-

to $350,000. (*Id.*) The Creditor testified that the $350,000 and $49,000 loans to H&W were

specifically for the 262 South Prospect Project. The Debtor's handwritten notes from that

meeting support the Creditor's testimony with respect to the $350,000 loan.

In addition, the Court finds that the communications between the Creditor and the

Debtor support the Creditor's testimony that the $350,000 and $49,000 loans were to be used

solely for the 262 South Prospect Project. The Debtor's e-mail message sent to the Creditor

on April 4, 2008 discussed only the 262 South Prospect Project and listed items that were

unpaid on that Project. (Creditor Ex. No. 14; Debtor Ex. No. 14.) Subsequently, on May 20,

2008, in another e-mail message to the Creditor, the Debtor admitted that the Creditor funded

the 262 South Prospect Project. (Creditor Ex. No. 15; Debtor Ex. No. 15.) The Debtor

stated that in a future meeting with the Creditor he wanted to discuss "the project you funded

at 262 [South] Prospect." (*Id.*) The e-mail also noted that if 262 South Prospect was to be

sold for a loss in 2008, "[w]e would basically end up having a long term debt to you which

[H&W] would repay over time with proceeds from other projects." (*Id.*) Further, the Debtor

"presented the possibility of [the Creditor] taking ownership of 262 [South] Prospect, since

*all of the equity in the project was provided by [the Creditor] and Lori* [his wife]." (Id.)

(emphasis added). In another e-mail dated May 27, 2008, the Debtor told the Creditor that

he wanted to "discuss our options with [262 South] Prospect. . . ." (Creditor Ex. No. 16;

Debtor Ex. No. 16.) In that message, he also mentioned that the Creditor's "money from this

project would be tied up longer than anyone wants." (*Id.*) In sum, these documents, which

were drafted by the Debtor and sent to the Creditor, support the Creditor's testimony and

-23-

understanding that the $350,000 and $49,000 loan proceeds were to be used solely for the 262 South Prospect Project.

The Debtor argues that the promissory notes and the Venture Agreement corroborate his testimony that the Creditor's funds were to be used by H&W for multiple projects. First, the promissory note dated January 13, 2007 stated that the principal amount of "$350,000, plus 20% of the net project profit on *underlying investment projects*; *relating to the construction project specified*, and as defined, in the Venture Agreement . . . shall be due and payable on the day of closing of the sale of the *single-family residence* specified in the Venture Agreement. . . ." (Creditor Ex. No. 4; Debtor Ex. No. 4.) (emphasis added). The Venture Agreement, in turn, provided that the $350,000 loaned by the Creditor would "be used to acquire and enhance real estate projects as discussed." (Creditor Ex. No. 2; Debtor Ex. No. 2.) The Venture Agreement also addressed how the Creditor's $350,000 could be converted into a membership interest in HW Development, which had not yet been formed. (*Id.*) The term "net project profit" as used in the promissory note was defined in the Venture Agreement as "all gross profits and receipts derived by H&W in conjunction with the Construction Projects, less usual and customary costs and expenses incurred and paid in the construction and sale of the *aforesaid single-family residence*. . . ." (*Id.*) (emphasis added). Finally, the second promissory note dated April 4, 2008 for the $49,000 loan was entitled "PROMISSORY NOTE–Operating Capital." (Creditor Ex. No. 5; Debtor Ex. No. 5.)

These documents refer to "underlying investment projects," "construction project specified," "single-family residence," "Construction Projects," and "aforesaid single-family residence." However, these terms are not defined anywhere in the first promissory note or

-24-

the Venture Agreement. The fact that some of these phrases are plural and could reference

several projects and that other terms are singular and could mean a single project does not

weigh heavily in favor of either the Creditor's or Debtor's position. Such ambiguities are

construed against the Debtor who created the documents. *See Bourke v. Dun & Bradstreet

Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Accordingly, the Court finds that these

documents do not definitively demonstrate that the Creditor's $350,000 and $49,000 loans

were to be utilized on several projects as the Debtor contends.

Instead, the Debtor's handwritten notes of the October 27, 2006 meeting between him

and the Creditor, as well as his e-mail messages of April 4, 2008, May 20, 2008, and May

27, 2008, are stronger and more persuasive evidence that the Debtor and the Creditor agreed

that the $350,000 and the $49,000 loans to H&W would be used to fund only the 262 South

Prospect Project. In his notes of the meeting, the only project that includes a dollar amount

is the 262 South Prospect Project. (Creditor Ex. No. 3; Debtor Ex. No. 3.) Further, in the

e-mail communications, the Debtor specifically mentions only the 262 South Prospect

Project. (Creditor Ex. Nos. 14-16; Debtor Ex. Nos. 14-16.) The Debtor's reference to the

Creditor providing all of the equity for and funding the 262 South Prospect Project further

supports the Creditor's testimony that the $350,000 and $49,000 loans were to be utilized

for that Project alone.

The Debtor points to the phrase "Operating Capital" in the title of the $49,000

promissory note and the language in his two April 4, 2008 e-mail messages to the Creditor

wherein he thanked the Creditor for his "continued support for our business" and "for the

$49,000 operating capital you have contributed this year to keep our business afloat" in

support of his argument that the $49,000 loan proceeds were to be used by H&W on multiple projects. (Creditor Ex. Nos. 5 & 14; Debtor Ex. Nos. 5 & 14.)  The Court finds that these general references do not establish that those funds were to be used by H&W on projects other than the 262 South Prospect Project.  While the first April 4, 2008 e-mail communication from the Debtor to the Creditor thanked the Creditor for his "continued support" of H&W, that message went on to discuss the 262 South Prospect Project and the remaining items that were unpaid on that Project. (Creditor Ex. No. 14; Debtor Ex. No. 14.) Moreover, on May 20, 2008, the Debtor sent the Creditor another e-mail message wherein he mentioned the $49,000 promissory note but primarily discussed "the project you funded at 262 [South] Prospect."  (Creditor Ex. No. 15; Debtor Ex. No. 15.)  The Debtor acknowledged in that communication that all of the equity in the 262 South Prospect Project was provided by the Creditor and his wife.  (*Id.*)  Hence, the Court is persuaded by the documentary evidence and the Creditor's testimony that the $49,000 loaned by the Creditor to H&W was for the 262 South Prospect Project.

Next, based on the evidence, the Court finds that the Creditor established that the Debtor intended to deceive the Creditor.  The Court can reasonably infer an intent to deceive on the part of the Debtor because the facts portray a clear-cut "picture of deceptive conduct" by him. *See Cent. Credit Union of Ill. v. Logan (In re Logan)*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005).  The Court finds that the Creditor showed that the Debtor knowingly misrepresented and misled him with respect to how the $350,000 and the $49,000 loan proceeds were to be utilized.  As previously stated, the totality of the more credible evidence demonstrates that the understanding was that the Creditor's $350,000 and $49,000 loans

would be used solely for the 262 South Prospect Project. The Debtor admitted that he intended to use those proceeds for other H&W construction projects. Indeed, the Debtor testified that he deposited the Creditor's funds into H&W's general operating account and used those monies on projects other than 262 South Prospect. The Court can, thus, infer an intent to deceive by the Debtor because he admittedly utilized the Creditor's $350,000 and $49,000 loan proceeds for other H&W construction projects.

Finally, the Court must determine whether the Creditor has met the justifiable reliance element of proof required under § 523(a)(2)(A). Looking at the totality of the evidence and all the facts and circumstances of this particular matter, the Court concludes that the Creditor justifiably relied on the Debtor's misrepresentation in advancing the loan proceeds. The Creditor's firm, Deady Roofing, had worked on several previous construction projects on which H&W was the general contractor. As a result, the Creditor testified that he trusted the Debtor. He had no duty to further investigate because the falsity of the Debtor's representation was not readily apparent at the time. Finally, the Creditor testified that had he known that the Debtor would be using his monies on projects other than the 262 South Prospect Project, he would not have invested those funds with H&W. Thus, the Court finds that the Creditor has demonstrated the justifiable reliance element of § 523(a)(2)(A).

Next, the Court must determine whether the $15,635.19 debt is non-dischargeable under § 523(a)(2)(A). The Court finds that the Creditor has failed to establish that the Debtor made a false representation in connection with that debt. The Creditor does not allege that the Debtor failed to use this money for the 262 South Prospect Project. Rather, the Creditor testified that he loaned H&W $15,635.19 for the purchase of the appliances for

262 South Prospect. There was no evidence adduced to show that this sum was not used for those appliances. In fact, the realtor's information sheet, as well as the multiple listing for 262 South Prospect, described the various appliances included with the property, all of which were apparently bought with the funds loaned by the Creditor. (Creditor Ex. Nos. 19 & 20; Debtor Ex. Nos. 19 & 20.) The 262 South Prospect Project sold for the sum of $1,100,000, and the closing statement did not indicate any credits to the purchaser for missing appliances. (Creditor Ex. No. 18; Debtor Ex. No. 18.) While the Creditor was not repaid the $15,635.19, the Debtor's mere failure to pay that debt, even if intentional and without excuse, is not actionable under § 523(a)(2)(A). *See Schubbe Resch Chiropractic & Physical Therapy Ctrs. v. Norton (In re Norton)*, 248 B.R. 131, 133-34 (Bankr. W.D. Wis. 2000).

In sum, the Court finds that the Creditor has proved the requisite elements for the $350,000 and the $49,000 debts (less the $9,000 repayment) to be found non-dischargeable under § 523(a)(2)(A) on the basis of false representation. However, the Creditor has failed to show all of the necessary elements with respect to the $15,635.19 debt.

## 2. Count II

Next, in Count II of the complaint, the Creditor alleges the same facts as in Count I and contends that the debts should be excepted from discharge based on actual fraud by the Debtor. For the same reasons articulated *supra* with respect to Count I of the complaint, the Court finds that the Creditor has established all of the requisite elements for the loans of $350,000 and $49,000 (less the $9,000 repayment) to be found non-dischargeable under § 523(a)(2)(A) on the basis of actual fraud. The Court finds that the Debtor committed fraud. He deceived the Creditor when he told him that the $350,000 and $49,000 loan proceeds

-28-

would be used for only the 262 South Prospect Project. Moreover, the Debtor intended to

defraud the Creditor as discussed *supra* with respect to Count I of the complaint. Further,

the fraud created the debts that are the subject of this dispute.

The Court finds, however, for the same reasons articulated in the discussion of Count

I, that the Creditor has failed to establish that the $15,635.19 debt is non-dischargeable under

§ 523(a)(2)(A) as a result of actual fraud.

### B.      Section 523(a)(4) Claim

#### 1. Count III

In Count III of the complaint, the Creditor alleges that the Debtor's actions constitute

defalcation with respect to the loan proceeds. Specifically, according to the Creditor, H&W

received the monies from the Creditor with the express understanding that the funds would

be used for only the 262 South Prospect Project. Further, the Creditor contends that the

Debtor stood as a fiduciary with respect to the loan proceeds and that a trust was created for

the Creditor's benefit.

The Court finds that the Creditor has failed to establish that a fiduciary relationship

existed among him, the Debtor, and H&W. There is no evidence that such a relationship

existed prior to the events discussed herein. Further, there was clearly no express trust

created between the parties. None of the documentary evidence revealed a trust. In addition,

the Court finds that the evidence fails to establish that the Debtor held a position of

ascendancy or control over the Creditor. The fact that the Creditor had previously invested

in real estate and was an experienced roofing contractor before becoming involved with the

Debtor put him on even footing with the Debtor.

Neither the Creditor's loans to the Debtor's company, H&W, nor the failure of H&W to repay the Creditor creates a fiduciary relationship among the Creditor, H&W, and the Debtor. While a clear breach of the contractual duties under the promissory notes, the non-payment does not rise to the level of fraud or defalcation. "A breach of contractual duties is not functionally equivalent to fiduciary fraud, defalcation, embezzlement or larceny." *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002). A contractual debtor/creditor relationship also does not rise to the level of a fiduciary relationship. *Lexington Health Care Ctr. of Elmhurst, Inc. v. McDade (In re McDade)*, 282 B.R. 650, 659 (Bankr. N.D. Ill. 2002). Hence, the Court finds that the Creditor's claim under § 523(a)(4) that the Debtor committed defalcation while acting in a fiduciary capacity fails.

## 2. Count IV

Next, in Count IV of the complaint, the Creditor contends that the Debtor embezzled the loan proceeds entrusted to him by using those funds for unauthorized purposes. According to the Creditor, the Debtor hid the improper use of those funds by failing to permit the Creditor access to H&W's checking account so that the Creditor could determine how the loan funds were being utilized.

The Court finds that the Creditor has failed to establish that the Debtor embezzled the loan proceeds. The Creditor has failed to proffer any evidence to show that the Debtor appropriated any of the Creditor's funds for his own benefit or that he did so with fraudulent intent and deceit. The evidence demonstrated that the Debtor deposited the Creditor's funds into H&W's operating account. Moreover, the evidence established that H&W spent more than $350,000 on the 262 South Prospect Project. (Creditor Ex. No. 8; Debtor Ex. No. 8.)

-30-

There was no evidence to show that the Debtor appropriated the funds for his own benefit.

The fact that the Debtor did not provide the Creditor access to H&W's operating account

records does not demonstrate that the Debtor used the Creditor's funds for his own personal

benefit. Accordingly, the Creditor's claim under § 523(a)(4) that the Debtor embezzled the

loan proceeds fails.

### C.    The Debtor's Affirmative Defenses

The Debtor asserts two affirmative defenses to the complaint. First, the Debtor

contends that the complaint is based upon the Venture Agreement and promissory notes

between the Creditor and H&W. As a result, the Debtor claims that the complaint fails to

state a claim upon which relief can be granted as to him. The Court finds that this

affirmative defense lacks merit. The basis of the instant complaint is not the Venture

Agreement and promissory notes. Rather, the complaint alleges misrepresentation, fraud,

defalcation, and embezzlement by the Debtor as a manager and/or member of H&W. That

the Venture Agreement and promissory notes were entered into between the Creditor and

H&W does not preclude the Creditor from bringing a § 523(a)(2)(A) or § 523(a)(4) claim

against the Debtor personally, as the agent of H&W, for his alleged misrepresentation, fraud,

defalcation, and embezzlement.

H&W was a limited liability company– an artificial entity–that could act only through

its members or managers. The Court finds that the Debtor, a member and/or manager of

H&W, acted as its agent. An allegation of fraud against an agent of an entity can be the basis

for a dischargeability action against the agent. *See generally Hemelt v. Pontier (In re*

*Pontier)*, 165 B.R. 797 (Bankr. D. Md. 1994). After all, "[a]gents are liable for their own

torts." *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994). Agents are personally liable for torts they commit even though performed in the name of an artificial entity. *Miller v. Simon*, 241 N.E.2d 697, 700 (Ill. App. Ct. 1968). Hence, this affirmative defense fails.

As for the second affirmative defense, the Debtor attempts to reserves the right to assert any other claims or defenses as may become available. "A reservation of unpled defenses is not a defense of any kind, much less an affirmative one." *Fogel v. Linnemann (In re Mission Bay Ski & Bike, Inc.)*, Ch. 7 Case No. 07 B 20870, Adv. No. 08 A 0055, 2009 WL 2913438, at *5 (Bankr. N.D. Ill. Sept. 9, 2009). Accordingly, the Court denies this purported affirmative defense.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Creditor has demonstrated that the loans of $350,000 and $49,000 (less the $9,000 repayment) he made to the Debtor are non-dischargeable under § 523(a)(2)(A). However, the Creditor has failed to show that the additional $15,635.19 loan is non-dischargeable under § 523(a)(2)(A). Further, the Creditor has failed to demonstrate that any of the debts are non-dischargeable under § 523(a)(4).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 7/13/10

John H. Squires
United States Bankruptcy Judge

cc:     See attached Service List

## SERVICE LIST

### Michael Deady v. Stuart M. Hanson and Hanson & White, LLC
### Adversary No. 09 A 00457

William P. Suriano, Esq.
Law Offices of William P. Suriano
280 Shenstone Road
Riverside, IL 60546

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

John M. Brom, Esq.
Robert R. Benjamin, Esq.
Querrey & Harrow, Ltd.
175 W. Jackson Blvd., Suite 1600
Chicago, IL 60604

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606