## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 04820 |
|  | ) | Chapter 7 |
| STUART M. HANSON, | ) | Judge John H. Squires |
| d/b/a HANSON & WHITE, LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
| _____ | ) |  |
| MICHAEL DEADY, | ) | Adversary No. 09 A 00457 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| STUART M. HANSON, individually, and | ) |  |
| HANSON & WHITE, LLC, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of the debtor, Stuart M. Hanson (the "Debtor"), pursuant to Federal Rule of Civil Procedure 59 and Federal Rule of Bankruptcy Procedure 9023 to alter or amend a Memorandum Opinion and Order that this Court entered on July 13, 2010. For the reasons set forth herein, the Court denies the motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

-2-

## II. FACTS AND BACKGROUND

On July 13, 2010, this Court issued a Memorandum Opinion (the "Opinion") wherein it found that debts in the sums of $350,000 and $49,000 (less a repayment of $9,000) owed by the Debtor to Michael Deady (the "Creditor") were non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). *Deady v. Hanson (In re Hanson)*, 432 B.R. 758 (Bankr. N.D. Ill. 2010). All of the relevant facts are contained in the Opinion and will not be repeated. *Id.* at 766-70.

On July 27, 2010, two weeks after entry of the Opinion, the Debtor filed the instant motion to alter or amend. The Court afforded the Creditor the opportunity to respond to the motion, but the Creditor failed to do so.

## III. APPLICABLE STANDARDS

Rule 59(e) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9023, permits a party to move the court to alter or amend a judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions serve a narrow purpose and must clearly establish a manifest error of law or fact, newly discovered evidence, *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007), or an intervening change in the controlling law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). The decision to grant or deny a Rule 59(e) motion is within the court's discretion. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

-3-

"The rule essentially enables a . . . court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Indeed, the Rule permits a party to bring to the attention of the court "factual and legal errors that may change the outcome so they can be corrected. It does not allow a party to introduce new evidence earlier available, or advance arguments that could and should have been presented prior to the judgment." *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 672, 673-74 (Bankr. N.D. Ill.), *aff'd*, 266 B.R. 676 (N.D. Ill. 2001), *aff'd*, 32 Fed. Appx. 158 (7th Cir. 2002). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation omitted).

The function of a motion to alter or amend a judgment is not to relitigate old matters or present the case under a new legal theory. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990). The rulings of a bankruptcy court "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *BNT Terminals*, 125 B.R. at 977.

-4-

## IV. DISCUSSION

The Debtor contends that the Court made numerous errors in its Opinion. According to the Debtor, the Court misunderstood the facts and evidence adduced at trial.[1] The Court finds that the Debtor failed to establish any manifest error of law or fact. In other words, the Court did not make any factual or legal errors that need to be corrected. *See Bruetman*, 259 B.R. at 673. The Court will address each of the Debtor's points in turn.

First, the Debtor argues that the Court erred in finding that the $49,000 loan was to be used solely for the 262 South Prospect Project. The Debtor maintains that the Creditor never made that assertion. Instead, according to the Debtor, the Creditor testified that he knew that the $49,000 loan was made to keep the Debtor's construction company afloat and would be used for its operating expenses. In support of his contention, the Debtor points to the $49,000 note, which is titled "PROMISSORY NOTE–Operating Capital," and quotes from the Creditor's closing argument wherein he stated that the Debtor "knew how to frame language of a note meant as a general loan to [his company] for operating capital as opposed to one that was restricted to a particular project." Based on the title of the note, the

---

[1] Before delving into the specific factual errors allegedly made by the Court, the Debtor asserts that intent to deceive is generally determined by the debtor's subjective intention at the inception of the debt. It is well established, however, that courts can consider subsequent conduct as long as that conduct provides an indication of the debtor's state of mind at the time of the actionable representations. *6050 Grant, LLC v. Hanson (In re Hanson)*, Nos. 09 B 04820, 09 A 00447, 2010 WL 3907122, at *3 (Bankr. N.D. Ill. Oct. 5, 2010) (collecting cases). Determining whether a debtor had the requisite intent under § 523(a)(2)(A) is, therefore, a factual, subjective inquiry decided by examining all of the relevant circumstances, including those that took place after the debt was incurred. *Id.* After all of the evidence has been produced, the court must then determine whether the circumstances, viewed in the aggregate, present "a picture of deceptive conduct" by the debtor, indicating an intent to defraud the creditor. *See Cripe v. Mathis (In re Mathis)*, 360 B.R. 663, 666 (Bankr. C.D. Ill. 2006).

-5-

Creditor's statement in his closing argument, and the lack of evidence to show that the $49,000 was not used for the company's operating expenses, the Debtor argues that the $49,000 debt should be discharged.[2]

The Court rejects the Debtor's contention that the Creditor did not assert that the $49,000 loan would be used only for the 262 South Prospect Project. The Creditor testified that in December 2007 or January 2008, the Debtor approached him and said that if he did not receive more funding, the Creditor would lose the $350,000 he previously loaned the Debtor for the 262 South Prospect Project. (Trial Tr. p. 28, lines 14-24.) Further, in March 2008, according to the Creditor, the Debtor again told him that he needed additional funds in order to keep the Creditor from losing his $350,000 investment in the 262 South Prospect Project and to keep the Debtor's company from "going under." (*Id.* at p. 30, lines 1-22.) The Creditor stated that he gave the Debtor the additional $49,000 because he did not want the company to go under and he wanted to see the 262 South Prospect Project completed. (*Id.* at p. 29, lines 20-25; p. 32, lines 12-16.)

The Court finds that the Debtor's statements fraudulently induced the Creditor to loan the Debtor an additional $49,000. The Debtor repeatedly told the Creditor that he would lose his initial $350,000 investment if the Debtor's company did not receive more funding. In furtherance of his scheme to obtain these additional monies from the Creditor, the Debtor refused to turn over his company's financial information requested by the Creditor.

---

[2] The Debtor's precise argument with respect to the latter is as follows: "No evidence showed that the $49,000.00 was not used toward [the company's] operating expenses." (Debtor Mot. to Alter or Amend, p. 4.) The Court does not fully understand the meaning of this sentence. However, the Court will examine the evidence as it pertains to the use of the $49,000, as well as the Debtor's other more clearly articulated contentions.

-6-

According to the Creditor, he asked the Debtor for the company's check register, but the Debtor failed to provide it. (*Id.* at p. 33, lines 21-25 - p. 35, lines 1-19.) The Court finds that the Debtor's refusal to provide the Creditor with the requested financial information further indicates the Debtor's fraudulent intent. Those financial records would have shown that the Debtor deposited the Creditor's funds into the company's general operating account and that those funds were used for projects other than 262 South Prospect. Hence, the totality of the circumstances presents "a picture of deceptive conduct" by the Debtor that indicates that he intended to deceive the Creditor. *See Mathis,* 360 B.R. at 666.

The Debtor makes much ado about the title of the $49,000 promissory note. As the Court noted in the Opinion, the fact that the title of the note contained the phrase "Operating Capital" is not outcome determinative on the issue of whether the $49,000 would be used on projects other than 262 South Prospect. *Hanson,* 432 B.R. at 778. That phrase was not specifically defined in the note. In fact, that language could be construed as operating capital for the 262 South Prospect Project. Because the meaning of "Operating Capital" was not clear, the Court looked to the e-mail communications between the Debtor and the Creditor. *Id.* In particular, the Debtor's May 20, 2008 e-mail message primarily discussed the 262 South Prospect Project that the Creditor funded, and the Debtor acknowledged in that communication that the Creditor and his wife provided all of the equity for that project. *Id.* Based on this documentary evidence, as well as the Creditor's testimony, the Court found that the Creditor loaned the additional $49,000 specifically for use on the 262 South Prospect Project. *Id.*

-7-

As for the Creditor's statement in his closing argument that the Debtor "knew how to frame language of a note meant as a general loan to [his company] for operating capital as opposed to one that was restricted to a particular project," the Court finds that such statement does not demonstrate that the Court erred when it found that the $49,000 loan was to be used solely for the 262 South Prospect Project. The Creditor's argument in his brief is not evidence; it is merely a statement by counsel.

Next, the Debtor maintains that the record reflects that the $350,000 loan was for multiple projects, including the 262 South Prospect Project. According to the Debtor, an inference of honest intent existed, and the objection to discharge of the $350,000 debt should have been resolved in his favor. Specifically, the Debtor contends that the Court's finding that more than $350,000 was spent on the 262 South Prospect Project cannot be reconciled with the Creditor's claim of fraud. According to the Debtor, the Creditor wanted his $350,000 loan to be used on the 262 South Prospect Project, and the Debtor's construction company did just that, spending over $350,000 on the project.

The Court disagrees with the Debtor's contention that an inference of honest intent existed and that the objection to discharge of the debt should have been resolved in his favor. Such an inference is reserved for the honest but unfortunate debtor. *See Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Although the Debtor here may be unfortunate, the evidence collectively and clearly established that he is not honest, at least with respect to his conduct in this matter. "[O]nly those debts honestly incurred should be afforded the benefits of a bankruptcy discharge." *Siebanoller v. Rahrig (In re Rahrig)*, 373 B.R. 829, 833 (Bankr. N.D. Ohio 2007) (*citing Cohen v. de la Cruz*, 523 U.S. 213, 217

-8-

(1998)). "[A] debtor who schemes to cheat another is undeserving of [the] discharge" provided by the Bankruptcy Code. *Rice, Heitman & Davis, S.C. v. Sasse (In re Sasse)*, Nos. 09-15128-7, 09-219, 2010 WL 3277970, at *8 (Bankr. W.D. Wis. Aug. 13, 2010). The totality of all of the relevant circumstances in the matter at bar, both before and after the establishment of the debts at issue, presents a picture of deceptive conduct by the Debtor, indicating an intent to deceive and defraud the Creditor.

Moreover, that the Court found that the Debtor's construction company spent more than $350,000 on the 262 South Prospect Project, *Hanson*, 432 B.R. at 769, does not mean that such finding cannot be reconciled with the Creditor's claim of fraud. The Debtor testified that while more than $350,000 was spent on the project, the Creditor's loan proceeds were not restricted solely to this project. (Trial Tr. p. 82, lines 5-25; p. 83, lines 1-3.) The Creditor's funds were deposited into the company's general account, and the Debtor admitted that he could not track how the Creditor's monies were spent. (*Id.* at p. 102, lines 21-25; p. 103, lines 1-9.) Simply because the company spent more than $350,000 on the project does not mean that all of those monies expended were in fact the Creditor's funds. Indeed, the Debtor admitted that he used the Creditor's funds for projects other than 262 South Prospect. (*Id.* at p. 82, lines 5-19.) Therefore, the Court's finding that more than $350,0000 was used by the Debtor's company on the project can be reconciled with the finding of fraud.

Next, the Debtor asserts that the manifest weight of the evidence demonstrated that the parties agreed that the Creditor's $350,000 loan could be used for more than one project. The Court rejects this argument. As the Court painstakingly explained in the Opinion, the more credible evidence established that the $350,000 loan was to be used solely for the 262

-9-

South Prospect Project. *Hanson*, 432 B.R. at 776-78. The Debtor argues that the Creditor

was impeached on cross examination regarding whether the loan could be used both for

multiple projects and to fill a budget gap that the Debtor's company was experiencing. The

Debtor, however, fails to cite to any specific reference in the trial transcript. It is not the job

of the Court to hunt through the record in order to search for alleged instances of

impeachment. *See In re Boone County Utils., LLC*, 506 F.3d 541, 542 (7th Cir. 2007)

("Judges are not Sudoku masters . . . who enjoy filling in a grid with few hints about where

things go."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like

pigs, hunting for truffles buried in [the record]."). Rather, the Debtor should have pointed

to specific portions of the transcript. In any event, the Court's careful examination of the

transcript reveals that the Creditor was not impeached with respect to how the loan proceeds

were going to be used. The Creditor testified repeatedly that he believed his $350,000 loan

was to be utilized solely for the 262 South Prospect Project. (Trial Tr. p. 21, lines 3-9; p. 25,

lines 21-25; p. 26, lines 1-18; p. 28, lines 10-13; p. 35, lines 20-25; p. 36, lines 1-2; p. 38,

lines 22-25; p. 39, lines 1-8; p. 40, lines 7-12; p. 48, lines 6-13; p. 51, lines 15-19; p. 55, lines

6-25; p. 56, lines 1-20; p. 59, lines 23-25; p. 60, lines 1-13; p. 67, lines 7-25; p. 68, lines 1-3;

p. 71, lines 23-25; p. 72, lines 1-15.) Thus, the Debtor's argument fails.[3]

------------------------

[3] The Debtor goes to great lengths to discuss the documentary evidence that lends
support to his own testimony about how the $49,000 was to be used. (Debtor Mot. to Alter
or Amend, pp. 5-6.) The Court exhaustively reviewed and discussed that evidence in the
Opinion and will not do so again here. Further, as discussed *supra* and *infra*, as well as in
the Opinion, the Court found that the testimony of the Creditor was more credible than the
Debtor's testimony.

-10-

The Debtor asserts that his testimony regarding how the $350,000 loan was to be used was not impeached and that, therefore, the Court should have afforded more weight to his testimony. While the Debtor may not have been impeached on this point, the Debtor's testimony did not produce conviction in the Court's mind regarding its truthfulness. *See Joseph v. Donover Co.*, 261 F.2d 812, 824 (9th Cir. 1958). Moreover, the Court found that the Debtor's testimony was controverted by the documentary evidence. *Hanson*, 432 B.R. at 776-77. Thus, even though the Debtor's testimony regarding his use of the Creditor's funds was not impeached, the Court found the totality of his testimony less credible than the Creditor's testimony on this critical point.

The Debtor further argues that because the Creditor was impeached on the central issue in this matter–whether the $350,000 would be used solely for the 262 South Prospect Project–the Court erred when it stated that he was impeached on "collateral issues." Specifically, the Court noted in the Opinion that "both parties were impeached at trial with their respective deposition testimony. Such instances of impeachment focused on related collateral issues." *Id.* at 776. The Court went on to further opine that "the Creditor's testimony [was] more credible than the Debtor's testimony." *Id.* According to the Debtor, however, the Creditor consistently confirmed in the complaint, written discovery, and joint pretrial statement that his $350,000 loan to the Debtor's company was to be used on more than one project.

As the Court previously stated, the Creditor invariably and repeatedly testified at trial that the Debtor represented to him that the loan proceeds would be used solely for the 262 South Prospect Project. After careful review of the trial transcript, the Court reiterates that

-11-

the impeachment of the Creditor's testimony did not affect his credibility. In particular, the impeachment testimony related to how the Creditor characterized his investment in the Debtor's company as opposed to other investments (Trial Tr. p. 45, lines 10-25; p. 46, lines 1-23); the entity in which he was investing (*id.* at p. 48, lines 6-25; p. 49, lines 1-15); whether the venture agreement referred to the 262 South Prospect Project and two lots on Colfax Street (*id.* at p. 55, lines 19-25 - p. 57, lines 1-16)[4]; and whether, at the time he signed the venture agreement, he knew that the Debtor was looking for investors to close a budget gap that his construction company was experiencing (*id.* at p. 57, lines 17-25 - p. 59, lines 1-18).[5] The Creditor was steadfast in his testimony that he thought he was investing in one project–262 South Prospect. As such, the Court rejects the Debtor's argument to the contrary.

Next, the Debtor posits that the contractual terms as memorialized in the promissory notes and the venture agreement control and the Court should not have looked beyond these documents. Specifically, the Debtor quotes language from the venture agreement which states that the agreement, as well as the promissory note, "sets forth the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, written or oral, between them as to such subject matter."

---

[4] On re-direct examination, the Creditor's testimony on this point was rehabilitated. The Creditor stated that he understood that the venture agreement allowed him to roll over the $350,000 investment into an entity that was to be created, receive a membership interest therein, and participate in other projects. (*Id.* at p. 72, lines 3-18.) This other entity, HW Development, LLC, however, was never created. *Hanson*, 432 B.R. at 767.

[5] The Creditor's testimony on this point was also rehabilitated. The Creditor stated that he understood the budget gap existed with respect to the 262 South Prospect Project, not the Debtor's whole company. (*Id.* at p. 70, lines 1-25; p. 71, lines 1-13.)

-12-

(Creditor Ex. No. 2; Debtor Ex. No. 2.)  As the Court noted in the Opinion, however, the

contractual terms in the venture agreement and the promissory notes are not clear.  *Hanson*,

432 B.R. at 777.  The venture agreement refers to the $350,000 being used "to acquire and

enhance real estate projects as discussed."  (Creditor Ex. No. 2; Debtor Ex. No. 2.)  That

same document refers to the "aforesaid single-family residence" but fails to identify a

residence.  (*Id.*)

When contracts are ambiguous, the Court can look beyond those documents and rely

on extrinsic evidence to explain the terms of the contracts.  *In re Consol. Med. Transp., Inc.*,

300 B.R. 435, 446 (Bankr. N.D. Ill. 2003) (*citing LaSalle Nat'l Bank v. Gen. Mills Rest.*

*Group, Inc.*, 854 F.2d 1050, 1051 (7th Cir. 1988)).  An ambiguity will be found only if the

language of the contract is "reasonably or fairly susceptible [to] more than one construction."

*United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539, 543 n.6

(7th Cir. 2000) (internal quotation omitted).  Because the venture agreement and promissory

notes were not clear on their faces, *see Hanson*, 432 B.R. at 777, the Court relied on the

testimony of the witnesses–the Debtor and the Creditor–and other documentary evidence to

determine the intent of the parties.  As discussed above, the Court found the Creditor's

testimony more credible than the Debtor's testimony and believed the Creditor's explanation

that he understood the loan proceeds were to be used only for the 262 South Prospect Project.

Also, the Court looked at the documentary evidence, namely, the Debtor's e-mail

communications to the Creditor, to arrive at the finding that the Creditor's monies were to

be used solely on that project.  *Id.* at 776-78.

-13-

Hence, the Court construed the venture agreement and promissory notes against the Debtor, the creator of the documents, and relied on the Creditor's testimony and other documentary evidence to support its finding that the loans were to be used solely for 262 South Prospect. *Id.* Given the ambiguities contained in the venture agreement and the notes, the Creditor's argument that the contractual terms alone control is disingenuous.

Finally, the Debtor states that the record is devoid of any evidence of actual fraud. The Debtor argues that the Creditor, in his closing argument, limited his claim to misrepresentation. The Debtor states that the Creditor did not allege any surprise, trick, cunning, dissembling, or any unfair way that he was cheated. The Court finds that the Debtor's argument lacks merit.

First, the fact that the Creditor's closing argument in his brief did not focus on fraud does not mean that the Debtor did not commit fraud. Closing arguments are not evidence; they are merely arguments of counsel. More importantly, Count II of the Creditor's complaint alleges that the Debtor "used deceit to cheat [him] out of the loan proceeds. . . ." and seeks a finding that the debts be excepted from discharge based on actual fraud. (Docket No. 1, p. 8 at ¶¶ 38 & 39.) Thus, the Debtor's contention that the Creditor did not allege fraud is simply inaccurate.

Actual fraud under § 523(a)(2)(A) encompasses a wide spectrum of circumstances and consists of "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (internal quotation omitted) (also noting that "'[n]o definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise,

-14-

trick, cunning, dissembling, and any unfair way by which another is cheated'"). The Court

found that the Debtor deceived the Creditor when he told him that the $350,000 and $49,000

would be used only for the 262 South Prospect Project. *Hanson*, 432 B.R. at 778. In fact,

the funds were not used solely for that project. The debts here resulted from the Debtor's

false representations and fraud, not from a mere breach of contract as he alleges. *See Mathis*,

360 B.R. at 666 ("[E]ntering into a contract or promising an act with no intention of

performance may support a finding of nondischargeability."). The Court, therefore, reiterates

its determination that the Debtor used false pretenses, made false representations, and acted

fraudulently, that he did so with the intent to deceive, that the Creditor justifiably relied on

such representations, and that the Creditor was injured as a result thereof.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court denies the Debtor's motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 10/14/10

John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

## SERVICE LIST

### Michael Deady v. Stuart M. Hanson and Hanson & White, LLC
**Adversary No. 09 A 00457**

William P. Suriano, Esq.
Law Offices of William P. Suriano
280 Shenstone Road
Riverside, IL 60546

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

John M. Brom, Esq.
Robert R. Benjamin, Esq.
Querrey & Harrow, Ltd.
175 W. Jackson Blvd., Suite 1600
Chicago, IL 60604

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604